1  McGREGOR W. SCOTT
   United States Attorney
2  ROBERT J. ARTUZ
   Special Assistant U.S. Attorney
3  501 I Street, Suite 10-100
   Sacramento, CA 95814
4  Telephone: (916) 554-2700
   Facsimile:  (916) 554-2900
5

6  Attorneys for Plaintiff
   United States of America
7

**FILED**

**AUG 08 2019**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
            DEPUTY CLERK

8              IN THE UNITED STATES DISTRICT COURT

9                 EASTERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,            CASE NO.  2:19-CR-0129 MCE

12                     Plaintiff,        18 U.S.C. § 1349 – Conspiracy to Commit Bank
                                         Fraud; 18 U.S.C. § 1344 – Bank Fraud (10 Counts);
13             v.                        18 U.S.C. § 1028A – Aggravated Identity Theft; 18
                                         U.S.C. §§ 981(a)(1)(C) and 982(a)(2)(A) and 28
14  JOHNATHON WARD,                      U.S.C. § 2461(c) – Criminal Forfeiture
    MONICA NUNES, and
15  TALALIMA TOILOLO,

16                     Defendants.

17

18

19                       I N D I C T M E N T

20  COUNT ONE: [18 U.S.C. § 1349 – Conspiracy to Commit Bank Fraud]

21      The Grand Jury charges:

22                       JOHNATHON WARD,
                         MONICA NUNES, and
23                       TALALIMA TOILOLO,

24  defendants herein, as follows:

25              I.      BACKGROUND

26      At times material:

27      1.      Defendant Johnathon WARD resided in various locations in Northern California.

28      2.      Defendant Monica NUNES resided in various locations in Northern California.

INDICTMENT                          1

3.      Defendant Talalima TOILOLO resided at various location is Northern California and Utah.

4.      A Merchant was a retail establishment, business, or company that sells goods or services.

5.      An Acquiring Bank (or Merchant Bank) was a financial institution that held and maintained Merchants' bank accounts. It allowed the Merchants to process bankcards (e.g., debit and credit cards) and other access device transactions, including payments and refunds, on behalf of the Merchants and allowed them to accept bankcard payments from the card-issuing banks.

6.      A Merchant Account was a type of bank account maintained by an Acquiring Bank. It allowed Merchants to accept payments via multiple electronic methods, typically using a bankcard or other access device.  Such an account was typically established under an agreement between a Merchant and an Acquiring Bank for the settlement of bankcard transactions. Some Acquiring Banks could process credit and debit card payments on behalf of the Merchant.

7.      A Payment Processor was a company selected by a Merchant or Acquiring Bank to process bankcard transactions from various channels for Merchants and Acquiring Banks.  Such transactions included payment transactions for the purchase goods and services and refund transactions for paying back customers for returns, reimbursements, and erroneous charges.  Although some Acquiring Banks acted as their own Payment Processor to process payment and refund transactions involving bankcards, others employed a specific Payment Processing company to process the payments and refunds for them.

8.      A Point of Sale (POS) Terminal was an electronic device used by Merchants to process bankcard transactions.  These transactions typically occurred when a customer purchased goods or services, or sought a refund, from a Merchant. A POS Terminal read information off a customer's bankcard, communicated with a Payment Processor or Acquiring Bank, and initiated payment and refund transactions.

9.      Vantiv, Inc. was a Payment Processor previously headquartered in Cincinnati, Ohio.  In or about January 2018, Vantiv acquired Worldpay Group plc and formed Worldpay, Inc., which remained headquartered in Cincinnati, Ohio.

10.      Global Payments Inc. was a Payment Processor headquartered in Atlanta, Georgia.  In or

about April 2016, Global Payments acquired another Payment Processing company named Heartland Payment Systems, Inc., which was headquartered in Princeton, New Jersey and Edmond, Oklahoma.

11.    Merchant 1 was a business located in Chico, California, in the Eastern District of California, whose Merchant Payment Processor was Worldpay/Vantiv.  Merchant 1's Merchant Account was with Tri Counties Bank, a bank that had deposits insured by the Federal Deposit Insurance Corporation.

12.    Merchant 2 was a business located in Sacramento, California, in the Eastern District of California, whose Merchant Payment Processor was Worldpay/Vantiv.  Merchant 2's Merchant Account was with Wells Fargo Bank, a bank that had deposits insured by the Federal Deposit Insurance Corporation.

13.    Merchant 3 was a business located in Merced, California, in the Eastern District of California, whose Merchant Payment Processor was Worldpay/Vantiv.  Merchant 3's Merchant Account was with Wells Fargo Bank, a bank that had deposits insured by the Federal Deposit Insurance Corporation.

14.    Merchant 4 was a business located in Bourbonnais, Illinois, whose Merchant Payment Processor was Worldpay/Vantiv.  Merchant 4's Merchant Account was with Bank of America, a bank that had deposits insured by the Federal Deposit Insurance Corporation.

15.    Merchant 5 was a business located in Orlando Park, Florida, whose Merchant Payment Processor was Worldpay/Vantiv.  Merchant 5's Merchant Account was with Countryside Bank, a bank that had deposits insured by the Federal Deposit Insurance Corporation.

16.    Merchant 6 was a business located in Chicago, Illinois, whose Merchant Payment Processor was Worldpay/Vantiv.  Merchant 6's Merchant Account was with United Fidelity Bank, a bank that had deposits insured by the Federal Deposit Insurance Corporation.

17.    Merchant 7 was a business located in Lewiston, Idaho, whose Merchant Payment Processor was Worldpay/Vantiv.  Merchant 7's Merchant Account was with Potlatch Federal Credit Union, a bank that had deposits insured by the Federal Deposit Insurance Corporation.

## II.    THE CONSPIRACY

18.    Beginning at least as early as July 2017, and continuing thereafter until in or about

1   February 2019, in the County of Sacramento, State and Eastern District of California, and elsewhere,
2   WARD, NUNES, and TOILOLO knowingly and intentionally conspired among themselves and with
3   other persons, known and unknown to the Grand Jury, to execute a material scheme and artifice to
4   defraud financial institutions, and to obtain the monies, funds, credits, assets, securities, and other
5   property owned by and under the custody and control of financial institutions by means of materially
6   false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States
7   Code, Section 1344, Bank Fraud.

8       19.    The defendants conspired to commit a fraud scheme referred to as "Refund Fraud" or
9   "Forced Post Refund Fraud." This fraud scheme exploited the Merchant refund process used to pay
10  back customers for returns, reimbursements, and erroneous charges. The defendants posed as Merchants
11  and executed fraudulent refunds, which caused the unauthorized transfer of money from a Merchant
12  Account to a bankcard or other access device account under the control of one or more of the
13  conspirators.

14                          III.    MANNER AND MEANS

15      During all times relevant to the conspiracy, the manner and means by which the conspiracy was
16  sought to be accomplished included, among others, the following:

17      20.    The conspirators purchased, stole, and otherwise obtained POS Terminals that were
18  capable of connecting to and communicating with Payment Processors and Acquiring Banks. The
19  conspirators also purchased, stole, and otherwise obtained unique POS Terminal ID numbers that
20  identified and were assigned to particular Merchants and Merchant Accounts.

21      21.    The conspirators connected POS Terminals to Payment Processors via phone lines,
22  Ethernet, and the Internet, and at least some of the terminals were already preconfigured to communicate
23  with a particular Payment Processor. Once connected to the Payment Processor, the conspirators
24  programmed and set-up each Terminal with one or more unique Terminal ID numbers without the
25  associated Merchants' authorization. This process typically involved the Terminal downloading a
26  particular Merchant application, and a Payment Processor would thereafter recognize the terminal as
27  being associated with that Merchant. The conspirators then used the programmed Terminals to conduct
28  transactions with the Payment Processors, and the Processors falsely recognized each Terminal as being

authorized by a particular Merchant and linked to that Merchant's account.

22.    In some cases, the POS Terminals were already preconfigured with particular Terminal ID numbers because a particular Merchant had previously configured and used them.  The conspirators obtained such used Terminals by, for example, theft and purchasing them from used equipment dealers and recycling facilities.  In such cases, the conspirators did not need to set up the Terminals with a particular Terminal ID number, and the Payment Processor recognized such Terminals as being authorized by the corresponding Merchants.

23.    The conspirators opened bank accounts and obtained associated bankcards and other access devices under their own identities and the identities of their co-conspirators.  The conspirators also unlawfully obtained the personal identifying and financial information of others without their authorization, and opened bank accounts and obtained bankcards under these stolen identities.  The conspirators obtained these accounts and bankcards in order to commit Refund Fraud.  Particularly, the conspirators intended to use these accounts and bankcards to receive fraudulent refunds processed using unauthorized POS Terminals.

24.    The conspirators used each POS Terminal to execute fraudulent refunds.  The refunds were fraudulent because neither the conspirators nor any other person made a purchase to establish any basis for the refunds.  During the fraudulent refund process, the conspirators used phone lines, Ethernet, and the Internet to connect a POS Terminal to a computer of a Payment Processor or Acquiring Bank.  If the Terminal was already programmed and set up with a particular Terminal ID number, the Processor falsely recognized it as being associated with a particular Merchant and Merchant Account. The conspirators then initiated the refund process by, among other things, using the Terminal's interface to input a fraudulent refund amount and swiping a bankcard (or inputting the bankcard information manually) at the Terminal.  The POS Terminal then transmitted the refund request to the Payment Processor.  The Payment Processor, falsely believing that the refund request came from the true Merchant, then processed the refund and caused the unauthorized transfer of refund funds from the Merchant Account to the conspirators' bankcard account.

25.    Merchants that have been victims of the conspirators' Refund Fraud include, without limitation, Merchants 1 through 7.  The Payment Processors and Acquiring Banks for these Merchants

1 | were also victims of this Refund Fraud.  For example, the conspirators' fraudulent refunds resulted in

2 | actual and attempted losses to at least the Acquiring Banks that held the Merchant Accounts.

3 | 26.   The conspirators depleted the bankcard accounts associated with the fraudulent refunds

4 | by using the accounts and bankcards to make purchases, cash withdrawals, and money transfers.

5 | 27.   In all, the conspirators caused and intended to cause victims to lose over $3.5 million.

6 | All in violation of Title 18, United States Code, Section 1349.

7 | COUNTS TWO THROUGH ELEVEN: [18 U.S.C. § 1344 – Bank Fraud]

8 | The Grand Jury further charges: T HA T

9 | JOHNATHON WARD,
MONICA NUNES, and
10 | TALALIMA TOILOLO,

11 | defendants herein, as follows:

12 | I.   THE SCHEME AND ARTIFICE TO DEFRAUD

13 | 28.   Paragraphs 1 through 17 of Count One are reincorporated as if fully set forth herein.

14 | 29.   Between in or about July 2017, and continuing through in or about February 2019, in the

15 | State and Eastern District of California, and elsewhere, WARD, NUNES, and TOILOLO, and others

16 | known and unknown to the Grand Jury, knowingly, and with the intent to defraud, executed and

17 | attempted to execute a material scheme and artifice to defraud each financial institution listed below,

18 | and to obtain the monies, funds, credits, assets, securities, and other property owned by and under the

19 | custody and control of each financial institution by means of materially false and fraudulent pretenses,

20 | representations, and promises.

21 | II.   MANNER AND MEANS

22 | In furtherance of the scheme and artifice to defraud and to obtain money, funds, credits, assets,

23 | securities, and other property, WARD, NUNES, and TOILOLO, and others known and unknown to the

24 | Grand Jury, employed, among others, the following manner and means:

25 | 30.   Paragraphs 20 through 27 of Count One are reincorporated as if fully set forth herein.

26 | III.   EXECUTION OF THE SCHEME AND ARTIFICE TO DEFRAUD

27 | 31.   On or about the following dates, WARD, NUNES, and TOILOLO knowingly executed

28 | and attempted to execute the scheme and artifice to defraud and to obtain the monies, funds, credits,

assets, securities, and other property owned by and under the custody and control of the below-listed federally insured financial institutions:

| Count | Date | Amount | Victim Financial Institution and Account | Transaction Description |
|---|---|---|---|---|
| 2 | 8/02/2018 | $1,000.00 | Wells Fargo Bank – merchant account ending x4701 | In San Joaquin County, executed and attempted to execute a fraudulent refund transaction posing as Merchant 4, using debit card ending x8563, and involving payment processor Worldpay. |
| 3 | 8/03/2018 | $2,500.00 | United Fidelity Bank – merchant account ending x4315 | In San Joaquin County, executed and attempted to execute a fraudulent refund transaction posing as Merchant 6, using debit card ending x4044, and involving payment processor Worldpay. |
| 4 | 8/15/2018 | $499.99 | Central Valley Community Bank – merchant account ending x5010 | In San Joaquin County, executed and attempted to execute a fraudulent refund transaction posing as Merchant 3, using debit card ending x5793, and involving payment processor Worldpay. |
| 5 | 8/16/2018 | $499.99 | Potlatch Federal Credit Union – merchant account ending x4817 | In San Joaquin County, executed and attempted to execute a fraudulent refund transaction posing as Merchant 7, using debit card ending x7515, and involving payment processor Worldpay. |
| 6 | 8/20/2018 | $499.99 | Tri-County Bank – merchant account ending x9971 | In San Joaquin County, executed and attempted to execute a fraudulent refund transaction, posing as Merchant 1, using debit card ending x9191, and involving payment processor Worldpay. |
| 7 | 9/16/2018 | $250.00 | Countryside Bank – merchant account ending x8000 | In Sacramento County, executed and attempted to execute a fraudulent refund transaction, posing as Merchant 5, using debit card ending x2061, and involving payment processor Worldpay. |
| 8 | 10/01/2018 | $9,000.00 | Wells Fargo Bank – merchant account ending x6992 | In Sacramento County, executed and attempted to execute a fraudulent refund transaction, posing as Merchant 2, using debit card ending x1302, and involving payment processor Worldpay. |
| 9 | 10/02/2018 | $9,000.00 | Wells Fargo Bank – merchant account ending x6992 | In Sacramento County, executed and attempted to execute a fraudulent refund transaction, posing as Merchant 2, using debit card ending x5396, and involving payment processor Worldpay. |
| 10 | 10/03/2018 | $1,000.00 | Wells Fargo Bank – merchant account ending x6992 | In Sacramento County, executed and attempted to execute a fraudulent refund transaction, posing as Merchant 2, using debit card ending x1594, and involving payment processor Worldpay. |

| Count | Date | Amount | Victim Financial Institution and Account | Transaction Description |
|-------|------|--------|------------------------------------------|-------------------------|
| 11 | 10/04/2018 | $1,500.00 | Wells Fargo Bank – merchant account ending x6992 | In Sacramento County, executed and attempted to execute a fraudulent refund transaction, posing as Merchant 2, using debit card ending x3558, and involving payment processor Worldpay. |

All in violation of Title 18, United States Code, Sections 2 and 1344.

COUNT TWELVE: [18 U.S.C. § 1028A – Aggravated Identity Theft]

    The Grand Jury further charges: T H A T

JOHNATHON WARD, and<br>
MONICA NUNES,

defendants herein, in the County of Sacramento, State and Eastern District of California, and elsewhere,

did knowingly transfer, possess, and use, without lawful authority, a means of identification of at least

one other person during and in relation to a felony violation of Title 18, United States Code,

Section 1349 (conspiracy to commit bank fraud) and Title 18, United States Code, Section 1344 (bank

fraud) as described below:

| On or About Date | Description |
|------------------|-------------|
| 8/15/2018 | Transferred, possessed, and used Victim 1's name, Victim 1's Conduent Direct Express debit card ending x0459, and Victim 1's associated Direct Express account number to execute and attempt to execute fraudulent refund transactions involving at least Merchant 3 in the amounts of $499.99 and $200. |
| 10/04/2018 | Transferred, possessed, and used Victim 1's name, Victim 1's Republic Bank and Trust Company debit card ending x3558, and Victim 1's associated bank account number to execute and attempt to execute fraudulent refund transactions involving at least Merchant 2 in the amounts of $1,500 and $499.99. |

All in violation of Title 18, United States Code, Sections 2 and 1028A.

FORFEITURE ALLEGATION: [18 U.S.C. §§ 981(a)(1)(C) and 982(a)(2)(A) and 28 U.S.C. § 2461(c) – Criminal Forfeiture]

    1.    Upon conviction of the offense alleged in Count One of this Indictment, defendants

JOHNATHON WARD, MONICA NUNES, and TALALIMA TOILOLO shall forfeit to the United

States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real and personal,

8

1  which constitutes or is derived from proceeds traceable to such violation, including but not limited to the

2  following:

3              a.      A sum of money equal to the amount of proceeds traceable to such offense, for

4  which defendants are convicted.

5      2.      Upon conviction of one or more of the offenses alleged in Counts Two through Eleven of

6  this Indictment, defendants JOHNATHON WARD, MONICA NUNES, and TALALIMA TOILOLO

7  shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(A), any property constituting or

8  derived from proceeds obtained directly or indirectly, as a result of said violations, including but not

9  limited to the following:

10             a)      A sum of money equal to the amount of proceeds obtained directly or indirectly,

11  as a result of such offenses, for which defendants are convicted.

12      2.      If any property subject to forfeiture as a result of the offenses alleged in Counts One

13  through Eleven of this Indictment, for which defendants are convicted:

14             a.      cannot be located upon the exercise of due diligence;

15             b.      has been transferred or sold to, or deposited with, a third party;

16             c.      has been placed beyond the jurisdiction of the court;

17             d.      has been substantially diminished in value; or

18             e.      has been commingled with other property which cannot be divided without

19                     difficulty;

20  it is the intent of the United States, pursuant to 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c),

21  incorporating 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendants, up to the

22  value of the property subject to forfeiture.

23                                                  A TRUE BILL.

24                                                  **/s/ Signature on file w/AUSA**

25

26                                                  FOREPERSON

27  _____

28  McGREGOR W. SCOTT
    United States Attorney

No. **2** 1 9 - CR - 0 1 2 9 MCE

---

# UNITED STATES DISTRICT COURT

*Eastern District of California*

*Criminal Division*

## THE UNITED STATES OF AMERICA
*vs.*

JOHNATHON WARD,
MONICA NUNES, and
TALALIMA TOILOLO

---

## I N D I C T M E N T

**VIOLATION(S):**

18 U.S.C. § 1349 – Conspiracy to Commit Bank Fraud; 18 U.S.C. § 1344 – Bank Fraud (10 Counts);
18 U.S.C. § 1028A – Aggravated Identity Theft;
18 U.S.C. §§ 981(a)(1)(C) and 982(a)(2)(A) and 28 U.S.C. § 2461(c) – Criminal Forfeiture

*A true bill,*          **/s/ Signature on file w/AUSA**

-------------------------------------------------
*Foreman.*

*Filed in open court this* ___ 8ᵗʰ ___ *day*

*of* ___ August ___ *A.D. 20* _19_

-------------------------------------------------
*Clerk.*

*Bail, $* _____

Johnathon Ward → NO BAIL WARRANT
Talalima Toilolo

GPO 863 525

Monica Nunes — NO PROCESS NECESSARY

8-8-19

**United States v. Ward et al.**
**Penalties for Indictment**

**COUNT 1:**
**All Defendants**

VIOLATION:          18 U.S.C. § 1349 – Conspiracy to Commit Bank Fraud

PENALTIES:          Up to 30 years in prison; or
                    Fine of up to $1,000,000; or both fine and imprisonment
                    Supervised release up to 5 years

**COUNTS 2 THROUGH 11:**
**All Defendants**

VIOLATION:          18 U.S.C. § 1344 – Bank Fraud

PENALTIES:          Up to 30 years in prison; or
                    Fine of up to $1,000,000; or both fine and imprisonment
                    Supervised release up to 5 years

**COUNT 12:**
**JOHNATHON WARD**
**MONICA NUNES**

VIOLATION:          18 U.S.C. § 1028A(a) – Aggravated Identity Theft

PENALTIES:          Mandatory 2 years in prison to run consecutive to any other term imposed
                    Fine of up to $250,000, or both fine and imprisonment
                    Supervised release of 1 year

SPECIAL ASSESSMENT: $100 (mandatory on each count)

**FORFEITURE ALLEGATION:    All Defendants**

VIOLATION:          18 U.S.C. §§ 981(a)(1)(C) and 982(a)(2)(A) and 28 U.S.C. § 2461(c) –
                    Criminal Forfeiture

PENALTIES:          As stated in the charging document

2: 1 9 - CR - 0 1 2 9 MCE